FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 09, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SHAREE RAE V.,

                Plaintiff,

   v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                Defendant.

NO:  2:18-CV-214-FVS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 12 and 13.  This matter was submitted for consideration

---

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

25(d).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

without oral argument. The Plaintiff is represented by Attorney Jeffrey Schwab. The Defendant is represented by Special Assistant United States Attorney Justin L. Martin. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 12, and **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 13.

## JURISDICTION

Plaintiff Sharee Rae V.[2] protectively filed for disability insurance benefits and supplemental security income on July 22, 2015, alleging an onset date of January 25, 2015. Tr. 224-34. Benefits were denied initially, Tr. 135-42, and upon reconsideration, Tr. 145-57. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on February 7, 2017. Tr. 41-84. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits, Tr. 12-30, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

/ / /

/ / /

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 23 years old at the time of the hearing. *See* Tr. 85. She completed high school and attended special education classes; and she attended one year of community college. Tr. 46, 49, 270, 314. She lived with a friend at the time of the hearing. Tr. 38, 46. Plaintiff has work history as a cashier. Tr. 47-48, 72. She testified that she stopped working, and has not attempted to return to work, because of back pain and cyclic vomiting syndrome. Tr. 50.

Plaintiff testified that she cannot work because she is not "able to communicate with others because of [her] bipolar"; bipolar and back pain make her irritable with people; she has trouble concentrating; she has trouble sleeping because of chronic back pain; she has cyclic vomiting syndrome; and she has depression. Tr. 54-58, 62-64. Plaintiff reported that she does chores with breaks because of back pain; occasionally goes grocery shopping and cooks; isolates herself in her room; and doesn't see people often. Tr. 59-60.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c),

416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 25, 2015, the alleged onset date. Tr. 17. At step two, the

ALJ found that Plaintiff has the following severe impairments: congenital postural lordosis, chronic pain syndrome, long-term use of drug, major depressive disorder, and social anxiety disorder. Tr. 18. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18. The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b) except she requires a sit-stand option, defined as changing from a standing position to a sitting position, or vice-versa, at least one time per hour for five minutes while remaining at the workstation. She can never climb ladders, ropes, and scaffolds or use moving or dangerous machinery, or be exposed to unprotected heights but can frequently stoop, crouch, kneel, crawl, and climb ramps and stairs. She would need to avoid no more than frequent [as opposed to continuous or repetitive] exposure to pulmonary irritants such [as] fumes, odors, dust, gases, etc. She would also need to work in a low stress environment (defined as not requiring the worker to cope with work related circumstances that could be a danger to the worker or others) and not at a production pace.

Tr. 19. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 24. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: cleaner, housekeeping, garment sorter, and mail clerk. Tr. 24-25. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 25, 2015, through the date of the decision. Tr. 25.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ properly considered Plaintiff's symptom claims;

3. Whether the ALJ failed to fully and fairly develop the record; and

4. Whether the ALJ erred at step five.

## DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the opinions of treating physician Mark Hanson, M.D. and reviewing physician Myrna Palasi, M.D.[3] ECF No. 12 at 12-17.

---

[3] Plaintiff also briefly argues that the ALJ erred by rejecting the treating physician's opinion "in favor of a contradictory opinion from [s]tate agency consultant Wayne Hurley, M.D." ECF No. 12 at 16. However, while an ALJ generally gives more weight to a treating doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002); *Orn,* 495 F.3d at 632–33. As noted by Defendant, Dr. Hurley reviewed the available medical evidence and his "opinion was consistent with record evidence, including the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10

### 1. *Mark Hanson, M.D.*

In May 2015, Plaintiff's treating physician, Dr. Mark Hanson, opined that she had marked to severe limitations in her ability to work at heights, climb and descend stairs, squat, bend, twist, lift, push, pull, drive, and stand.  Tr. 362.  Dr. Hanson further opined that Plaintiff was "severely limited" in her ability to perform in a regular predictable manner despite her impairment.  Tr. 363.  The ALJ granted his opinion little weight for several reasons.  Tr. 23.

First, the ALJ gave Dr. Hanson's opinion little weight because "he specifically [stated] that they were still awaiting [Plaintiff's] MRI results and when asked for her examination findings, Dr. Hanson wrote, 'see subjective summary.'"  Tr. 23.  Plaintiff argues that although "Dr. Hanson did not have these results at the time of his evaluation, his opinion was justified by his thorough physical examination," which included observations of moderate discomfort with ambulation and sitting, standing, and arising from sitting; lordotic lumbar curvature; some tenderness; positive straight leg raise test; and limited range of motion.  Tr. 365-66.  However, the ALJ may discredit a physician's opinion that is unsupported by

_____

physical examinations and diagnostic imaging results, which, [as noted by the ALJ], were mostly unremarkable during the relevant period."  ECF No. 13 at 10.  The Court finds no error in the ALJ's consideration of Dr. Hurley's opinion.
.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

objective medical findings. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). And the ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, as noted by the ALJ, in the "objective" section of Dr. Hanson's opinion, he relied entirely on Plaintiff's subjective complaints that her pain was worsened when lifting, bending, twisting, pulling, walking more than thirty minutes, sitting for longer than thirty to forty minutes, driving more than twenty minutes, and standing more than twenty minutes. *See* Tr. 362, 365. As discussed below, Plaintiff's subjective complaints were properly discounted by the ALJ. Moreover, Dr. Hanson indicated that he was unable to determine how long the current limitation on work activities would persist with available medical treatment because he was still awaiting the requested MRI results. Tr. 363. To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).

Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to conclude that Dr. Hanson's opinion was unsupported by objective medical findings, and based in large part on Plaintiff's properly discounted subjective complaints. *See Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). These were specific and legitimate reasons to reject Dr. Hanson's opinion.

### 2. Myrna Palasi, M.D.

In July 2015, state agency reviewing physician Dr. Myrna Palasi opined that Plaintiff had "severe limitation" in the categories of "postural restriction" and "gross or fine motor skill restrictions." Tr. 415. Dr. Palasi further opined that Plaintiff was unable to perform activity at all exertional levels,` but simultaneously determined that the highest level of work Plaintiff could perform, based on the exertional table, was sedentary. Tr. 415. Finally, Dr. Palasi noted that "severity is indeterminable based on evidence" regarding Plaintiff's ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; perform routine tasks without undue supervision; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; and ask simple questions or request assistance. Tr. 415. The ALJ gave her opinion little weight for several reasons. Tr. 23.

First, the ALJ found Dr. Palasi's assessment of a sedentary RFC "does not comport with indications on the same page that [Plaintiff] was unable to perform sedentary work and that the severity of [Plaintiff's] limitations was indeterminable based on the evidence." Tr. 23. Internal inconsistencies within a physician's report constitute relevant evidence when weighing medical opinions. *Morgan v.*

*Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). Plaintiff contends that this finding "mischaracterizes the evidence" because Dr. Palasi "acknowledged this discrepancy when she stated that due to the severity of [Plaintiff's] combined conditions, a less than sedentary RFC was recommended." ECF No. 12 at 15 (citing Tr. 412). Plaintiff is correct that one portion of Dr. Palasi's opinion indicated that "due to the severity of this [Plaintiff's] combined conditions (morbid obesity and L-spine DDD) recommend a less than sedentary RFC." Tr. 412. However, in support of this finding, the ALJ relies on a separate portion of Dr. Palasi's opinion that assessed Plaintiff as entirely unable to perform sedentary work according to the "exertional table"; but simultaneously checked the box for the "highest level of work the [Plaintiff] can perform on the Exertional Table above" as "sedentary" as opposed to checking the box for "less than sedentary." Tr. 415. This internal inconsistency was a specific and legitimate reason to give Dr. Palasi's reviewing opinion less weight.

Second, the ALJ noted that Dr. Palasi "indicated that [Plaintiff] was severely limited for gross and fine skills, for which there has been no evidence." Tr. 23. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion). Plaintiff argues this finding is "incorrect"

because Dr. Palasi "indicated" that Plaintiff's condition was worsened by "gross motor skills" such as lifting and walking; and Plaintiff "consistently" complained of difficulty running, walking, lifting, and performing daily activities. ECF No. 12 at 16. However, as argued by Defendant, to the extent Dr. Palasi assessed severe fine motor restrictions, there were no objective findings to support this limitation. ECF No. 13 at 8. Moreover, the evidence cited by Plaintiff in support of this argument, including the evidence cited by Dr. Palasi as to restrictions on Plaintiff's ability to lift, walk, and sit, is largely comprised of Plaintiff's subjective complaints, which, as discussed herein, were properly discounted by the ALJ. ECF No. 12 at 16 (citing Tr. 412, 334, 338, 356, 364-65, 378-80, 385, 405). For all of these reasons, it was reasonable for the ALJ to conclude that the severity of the limitations assessed by Dr. Palasi was inadequately supported by objective or clinical evidence in the overall record.

**B. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could

reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's

> statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. Accordingly, these statements have been found to affect

[Plaintiff's] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

Tr. 20.  Plaintiff generally argues that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom claims, and "he failed to identify what testimony was credible and what testimony undermines [Plaintiff's] complaints."  ECF No. 12 at 18-19.  However, Plaintiff does not "specifically and distinctly" identify or challenge any of the ALJ's reasons for discounting Plaintiff's symptom claims.  *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).  Despite Plaintiff's waiver, in an abundance of caution, the Court will review the ALJ's findings regarding Plaintiff's symptom claims.

### 1.  Lack of Objective Medical Evidence

First, the ALJ noted Plaintiff's medical records "show that since 2015, her examinations have been unremarkable" and "the only objective findings of record have been exaggerated lordosis curve."  Tr. 20.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 17

Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling physical limitations, including: examinations "throughout 2015" showing Plaintiff had normal curvature of the back, normal motor, normal coordination, and normal reflexes; August 2015 findings that "there were absolutely no significant findings on MRI" aside from the exaggerated lordotic curve; August 2015 examination results of no strength deficits, no sensory loss, and no neural tension signs or abnormal reflexes; September 2015 treatment notes indicating that Plaintiff's nerve conduction findings did not correlate with her examination and she "gave poor effort throughout most of the examination"; and "her examinations in 2016 were without any significant deficits or limitations." Tr. 21-22 (citing Tr. 359, 394, 456-61, 479-80, 488, 507, 510, 515, 527, 530, 533-34, 538). Similarly, the ALJ outlined medical evidence inconsistent with Plaintiff's allegations of disabling mental health limitations, including examining psychiatrist's conclusion that Plaintiff's problem was "treatable, with a good likelihood of recovery and is likely to improve within the next 12 months with standard-of-care treatment"; and the general lack of evidence of mental health treatment and "no mention of bipolar symptomatology" at Plaintiff's "regular medical visits" across the adjudicatory period. Tr. 22; *see Burch*, 400 F.3d at 680 (minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor); *see also Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of

her pain and impairments is unreliable, the ALJ must make a credibility determination . . . [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains.").

As noted above, Plaintiff does not challenge this finding in her opening brief; therefore, the Court may decline to consider this issue. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Regardless, the Court finds the ALJ reasonably relied on evidence from the overall record, as cited extensively above, to support the finding that despite Plaintiff's complaints of "pain and limitations," her physical and mental examinations and objective test results were unremarkable. Tr. 20-22. This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 2. *Improvement with Medication*

The ALJ found that Plaintiff has "reported significant improvement with medication management in both her allegations of back pain and her allegations of bipolar disorder." Tr. 20. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of the Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2005); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or

other severe limitations). In support of this finding, the ALJ noted that Plaintiff reported to Dr. Hanson in June 2015 that "she had tried cannabis edibles with successful diminishment of pain to 5/10 without adverse side effect"; in December 2016 Plaintiff reported that medication was helping to decrease her back pain and she was sleeping better; and records show Plaintiff's asthma, esophagus reflux, and ulcer have "either improved or remained under control and stable with medication during the adjudication period." Tr. 21-22 (citing Tr. 399, 505). As to his mental impairments, the ALJ additionally noted that Plaintiff "requested a re-initiation of her medication in June 2015 with significant improvement of mood within a month"; in August 2015 Plaintiff was noted to be "well-controlled on lithium"; in November and December 2015 Plaintiff reported she was doing well on her new medication, which was helping a lot and she felt she was in much better control; and in January 2016 she reported her medication was working "amazingly well." Tr. 22 (citing Tr. 399, 455, 462, 465, 536, 538).

The improvement of Plaintiff's physical and mental complaints with medication is a clear, convincing, and unchallenged reason to discount his symptom claims.

### 3. Failure to Seek Mental Health Treatment

Finally, the ALJ noted that
[a]lthough bipolar disorder has been included in her list of diagnoses along with chronic lumbosacral back pain, morbid obesity, and long-term use of and encounter for therapeutic drug monitoring and opioid dependent, there is no evidence of any mental health treatment and

more importantly, despite her regular medical visits, there is no mention of any bipolar symptomatology.

Tr. 22. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn*, 495 F.3d at 638. Further, when there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of Plaintiff's complaints. *Molina*, 674 F.3d at 1113-14. As noted above, Plaintiff does not raise this issue in her opening brief; nor does the Court discern any evidence suggesting that Plaintiff's failure to seek ongoing mental health treatment was attributable to her alleged mental health symptoms. *Carmickle*, 533 F.3d at 1161 n.2. Thus, the Court finds that Plaintiff's failure to seek mental health treatment was a clear, convincing, and unchallenged reason for the ALJ to reject her symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## C. Duty to Develop the Record

An ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff generally argues, without citation to the record, that the ALJ failed

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21

to fully and fairly develop the record by failing to call a medical expert to testify regarding (1) "limitations from [Plaintiff's] learning disability" and (2) whether "the orthopedic findings in combination with [Plaintiff's] obesity and other medical problems" meet or equal a listing at step three. ECF No. 12 at 17. However, Plaintiff fails to identify any limitations related to an alleged cognitive disorder, or combination of "medical problems," that were not properly accounted for in the RFC. *Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination). Moreover, as noted by Defendant, it is Plaintiff's duty to prove that she is disabled; and this burden cannot be shifted to the ALJ simply by virtue of the ALJ's duty to develop the record. ECF No. 13 at 12 (citing *Mayes*, 276 F.3d at 459-60). The ALJ did not find, and the Court is unable to discern, any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole. *See Bayliss*, 427 F.3d at 1217. Rather, as discussed herein, the ALJ identified sufficient evidence in the record as a whole for a properly supported disability determination and as such there is no ambiguity to be resolved. The ALJ did not err in failing to further develop the record in this case.

**D. Step Five**

Last, Plaintiff argues the ALJ failed to account for limitations set forth in the medical opinions discussed above; thus, the ALJ erred at step five by posing an incomplete hypothetical to the vocational expert. ECF No. 12 at 19-20. Plaintiff is

correct that "[i]f an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray,* 554 F.3d at 1228 (citation and quotation marks omitted). However, as discussed in detail above, the ALJ's rejection of the medical opinions of Dr. Hanson and Dr. Palasi, and the consideration of Plaintiff's symptom claims, was supported by the record and free of legal error. The hypothetical proposed to the vocational expert contained the limitations reasonably identified by the ALJ and supported by substantial evidence in the record. Thus, the ALJ did not err at step five.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly weighed the medical opinion evidence, provided clear and convincing reasons to discount Plaintiff's symptom claims, did not err in failing to develop the record fully and fairly, and did not err at step five. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

1    2.  Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED**.

2    The District Court Clerk is directed to enter this Order and provide copies to

3    counsel.  Judgement shall be entered for Defendant and the file shall be **CLOSED**.

4    **DATED** September 9, 2019.

5

6                                    _s/ Rosanna Malouf Peterson_
                                     ROSANNA MALOUF PETERSON
7                                    United States District Judge